The opinion of the Court was delivered by
Johnston, Ch.
For my own part, I regard it as of little consequence whether the executor did or did not assent to the legacy for life in favor of the widow. If he did assent, his assent could divest him of his title and control beyond the life estate, only in the event that the slaves were bequeathed in remainder. Without such ulterior disposition, they reverted to the executor, on the death of the life tenant, for administration, according to the powers conferred on him by the will. In this case, the testator has not given the slaves in remainder, but merely directed that they be sold, and the proceeds divided among his children. This did not give the slaves to the children, but merely imparted to them an equitable interest in the amount for which the executor might sell them, and a right to compel him to make such sale. The title remained in the executor, subject to the life estate of the widow.
But the Chancellor has concluded, and, as we think, is warranted by the evidence in his judgment, that there was *570 no assent; and the consequence is that the slaves remained, in the hands of the executor, with a legal title on his part, and were liable to be dealt with by creditors as in common cases.
Then as to the judgment obtained in Georgia by Cullen Fretwell. The Constitution of the United States, (article iv, sec. 1, 1 Stat., 178,) provides that “full faith aud credit shall be given, in each State, to the public acts, records and judicial proceedings of every other State. And the Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.” Under the power thus conferred, the Congress, by Statute of 1790,(Brev. Dig., 317, 1 Laws of the United States, 115,) enacted, “that the Acts of the Legislatures of the several States shall be authenticated by having the seal of their respective States affixed thereto. That the records and judicial proceedings of the Courts of any State shall be proved, or admitted, in any other Court within the United States, by the attestation of the clerk, and the seal of the Court annexed, if there be a seal, together with a certificate of the Judge, Chief Justice, or presiding Magistrate, as the case may be, that the said attestation is in due form. And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every Court within the United States, as they have, by law or usage, in the Courts of the State from whence the said records are, or shall be takeii.”
It is unnecessary to quote the numerous cases in this State in which our Courts have given conclusive credit to the authenticated judicial records of other States. The irregularities of such proceedings are no ground for disregarding them. If they have effect as evidence in the State where they took place, though they can have no direct operation here, we are bound to regard them as good judgments; to accept them as evidence, and to make them the basis of such *571 further proceedings as the parties producing them may claim and be entitled to in our Courts.
We find before us a judgment, properly authenticated, rendered in Georgia against the executor of Wm. Fretwell, and expressly made leviable out of the goods and chattels of the testator. Slaves of the testator, of which the legal title was in the executor, were sold under it. But we are required to look into that judgment and declare that it had no efFect in Georgia to render these slaves liable. We cannot do it. We have no evidence to shew that by the laws of Georgia the judgment was either void or voidable. It is not enough to say that the proceeding may contain irregularities, or that upon the same premises, we should not have given such a judgment here. What a Court of Georgia has adjudged, we are to take as a good Georgia judgment, while that judgment remains unroversed. We suppose, in the absence of any proof to the contrary, that were the judgment under consideration produced in evidence in a Georgia Court, that Court would, also, regard it as a valid judgment; whatever it might do were it produced on an application, or proceeding, to reverse it, or set it aside. Were the bill before us a bill to reverse it, or set it aside, are we competent to do such an act? But were we competent, the bill seeks no such remedy; and we could not set aside one of our own judgments, much less a foreign judgment, collaterally.
But, it is objected that the parties seeking remedy in this Court were not parties to the Georgia proceeding, and, therefore, are not bound by it. They were not parties; but if there was a necessary privity between them and the executor, who was a party, they are concluded by the judgment rendered, while that remains. It would be au alarming doctrine that a purchaser of estate property, under a subsisting judgment against the executor, which judgment expressly makes that property liable, has not obtained a good title, simply because the creditor did not make the distributees or legatees parties to his suit, but sued the executor, (not being *572 allowed by the forms of law to sue any other) for his debt. Every day furnishes us with instances in which the executor necessarily represents distributees and legatees in such suits; and if, under such proceedings, a devastavit is committed, the remedy must be against the executor, unless there has been some collusion with the cre'ditor, the purchaser, or some other person ; — in which case, though a bill will lie against all those implicated in the fraud, it must be (as this bill is not) framed for that purpose. The matter cannot be taken up collaterally.
But again, it is objected that the proof of the sale by the sheriff was not sufficient. The objection points to the non-production of the execution, and the return of sale. There was certainly no proof, from the record, of the sale. But there was ample proof by parol, that the sale was, in fact, made by the sheriff. Mr. Cone, one of the witnesses, says, that though by the law of Georgia there should be an execution and return of sale, there is, in fact, a general inattention by the officers to this requisition. Under these circumstances, and the fact of sale being made out, it would seem unreasonable that the interests of the purchaser should be sacrificed, by making him responsible for the non-production of the papers required; over which he never had any control, and which, though they may have been regularly filed, may have been lost in the lapse of years which has occurred since the sale was made.
The defendant having, according to the foregoing view, obtained the legal title, and without notice of any equity, must be protected in this Court. If Cullen Fretwell had notice, that does not affect this defendant; the well-recognized doctrine of equity being, that wherever, in a succession of purchasers, you reach one who is innocent, and purchases in ignorance, the title is thenceforth sanctified.
According to the view I have taken, the statute of limitations becomes an immaterial question. But it may be material to observe, that the great lapse of time which has *573 occurred, tends very much to support the defendant’s case. This is true, not only in supplying lost papers, but in raising the presumption that there was no wrong committed. If the widow saw injustice in the transactions now complained of, it is singular that she should have remained silent through the many years that elapsed between these transactions and her death.
We see no sufficient ground for the appeal, and it is ordered, that the decree be affirmed and the appeal dismissed.
Dunkin and Wardlaw, CC., concurred.

Decree affirmed.